**United States District Court**
**Central District of California**



FILED
CLERK, U.S. DISTRICT COURT
JUL 18, 2018
CENTRAL DISTRICT OF CALIFORNIA
BY: BH DEPUTY

| | |
|---|---|
| Julio C. Alas, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>AT&T, Inc., et al.,<br><br>　　　　　Defendants. | LACV 17-08106-VAP (RAOx)<br><br>**Order re Defendants' Motion to Dismiss First Amended Complaint with Leave to Amend**<br><br>**(Doc. No. 54.)** |

　　　　On March 27, 2018, Plaintiffs Julio C. Alas, Robert J. Bugielski, and Chad S. Simecek, individually as participants in the AT&T Retirement Savings Plan (the "Plan") and as representatives of all persons similarly situated, filed the First Amended Class Action Complaint ("FAC") under the Employment Retirement Income Security Act ("ERISA"), 28 U.S.C. §§ 1132(a)(2) and (3), against Defendants AT&T, Inc.[1], AT&T Services, and John Does 1-50 ("Defendants"), for Defendants' alleged breach of their fiduciary duties. (Doc. No. 51.)

　　　　On May 8, 2018, Defendants filed the pending Motion to Dismiss.[2] (Doc. No. 54.)

---

[1] The FAC asserts claims against AT&T, Inc., even though on December 21, 2017, the parties filed a stipulation to dismiss AT&T, Inc. from this suit. (Doc. No. 28.)

[2] In connection with their Motion, Defendants refer to and attach true and correct copies of the following documents: (1) the Form 5500 Annual Return/Report of Employee Benefit Plan for the 2013 calendar year; (2) the Form 5500 Annual Return/Report of Employee Benefit Plan for the 2014 calendar year; (3) The Form 5500 Annual Return/Report of Employee Benefit Plan for the 2015 calendar year; (4) The Prospectus and Summary Plan Description for the AT&T Retirement Savings Plan (Doc. Nos 54-1, 54-2, 54-3, 54-4.) As these documents are all matters

1

Plaintiffs filed their Opposition[3] on June 18, 2018 (Doc. No. 58) and Defendants filed their Reply on July 2, 2018 (Doc. No. 60).

After considering all papers filed in support of and in opposition to Defendants' Motion, and the arguments of counsel at the hearing on July 16, 2018, the Court rules as follows.

## I.     SUMMARY OF ALLEGATIONS

The Plan is a defined contribution employee pension benefit plan under 29 U.S.C. § 1002(2)A) and § 1002(34).  (FAC ¶ 12.)  It had 241,414 active participants as of December 31, 2016, and $34,792 billion in net assets, is one of the largest retirement plans in the country, ranking in the top 0.1% of over 500,000 American 401(k) plans.  (*Id.* ¶ 3.)  The Plan is funded by a combination of salary withholding by its participants and employer matching contributions.  (*Id.* ¶ 29.)  Participant accounts in the Plan consist of employee contributions, employer contributions, and any investment income from the investment options selected within the participant account, less fees and expenses.  (*Id.* ¶ 30.)

---

of public record, or whose authenticity cannot be questioned and are integral to Plaintiffs' claims, they are proper for judicial notice under Federal Rule of Evidence 201.

[3] In support of their Opposition, Plaintiffs refer to and attach true and correct copies of the following documents: (1) the AT&T Retirement Savings Plan as amended and restated as of December 15, 2011; (2) Actions by the Chief Financial Officer of AT&T, Inc. to Reconstitute and Delegate to the Benefit Plan Investment Committee; and (3) Consent of the Board of Directors of AT&T Services, Inc. to Action Taken in Lieu of a Special Meeting Pursuant to Del. Code Ann. Tit. 8 § 141(f). (Doc. Nos. 58-2, 58-3, 58-4.) As these are documents whose authenticity cannot be questioned, they are likewise proper for judicial notice under Federal Rule of Evidence 201.

Plaintiffs Alas, Bugielski, and Simecek are current or former employees of AT&T and Plan participants. (*Id.* ¶¶ 18-20.)

Defendants chose Fidelity Investments Institutional Operations Company, LLC ("Fidelity") to provide the Plan's recordkeeping and administrative services. (*Id.* ¶ 39.) Defendants chose Fidelity Brokerage Services, LLC, to provide self-directed brokerage accounts to Plan participants through Fidelity's trademarked BrokerageLink® service. (*Id.* ¶ 40.) Defendants chose Financial Engines Advisors LLC ("Financial Engines") to provide individualized computer-based investment advice to Plan participants. (*Id.* ¶ 41.) In light of the Plan's large size and the competition among recordkeeping service providers, the Plan "had the bargaining power to obtain and maintain very low fees for recordkeeping and other administrative services, and had significant leverage to procure high quality management and administrative services at a low cost." (*Id.* ¶ 46.) Defendants, however, failed to leverage the Plan's size to obtain reasonable recordkeeping fees. (*Id.* ¶ 47.) The recordkeeping fees the Plan paid to Fidelity were "well above the market rate, and cost Plan participants "tens of millions of dollars in unnecessary recordkeeping expenses during the class period." (*Id.* ¶¶ 55-57.) Plaintiffs allege that Defendants' failures with regard to recordkeeping began no later than 2012 and have continued to the present. (*Id.* ¶ 56.)

Beginning in 2014, Fidelity began to receive "indirect compensation" from Financial Engines without providing any material service to Financial Engines or Plan participants to justify these payments. (*Id.* ¶ 61.) Defendants' failure to monitor Fidelity's total compensation caused the Plan's participants to pay unreasonable administrative expenses to Fidelity. (*Id.* ¶ 63.) This was part of a "larger agreement" between AT&T and Fidelity, whereby Fidelity offered other

benefits to AT&T and was motivated by primarily by Defendants' self-interest and at the expense of the Plan's participants. (*Id.* ¶¶ 64-49.)

Through BrokerageLink, Fidelity allowed Plan participants to invest in a wide range of mutual funds that are not included among the Plans' designated investment alternatives through an account that is referred to as a "brokerage window" or "self-directed brokerage account." (*Id.* ¶ 71.) Plan participants who used BrokerageLink compensated Fidelity by paying Fidelity a variety of brokerage fees. (*Id.* ¶ 72.) Defendants controlled the mutual funds that would be offered to the Plan's participants through BrokerageLink and offered retail shares of certain mutual funds when less expensive institutional shares of the same fund were also available. (*Id.* ¶ 81.) Quality retirement plans are generally eligible to purchase institutional class shares where available, and the Plan here should have been able to obtain the lowest price share class of any mutual fund on the market. (*Id.* ¶ 80.) The way in which the funds were offered to the Plan's participants caused participants "to select the higher cost share classes that pay significantly higher fees than necessary, depleting their retirement savings in the process." (*Id.* ¶ 83.) "The increased revenue sharing payment from the unnecessarily expensive share classes sold to Plaintiffs amounted to pure profit for Fidelity." (*Id.* ¶ 85.) Defendants also did not properly educate Plan participants about the operation of BrokerageLink and failed to account for the revenues received by Fidelity from the participants' use of BrokerageLink. (*Id.* ¶ 93.)

Based on the foregoing, Plaintiffs now assert the following two claims against Defendants: (1) Breaches of Fiduciary Duty and Self-Dealing Prohibited

Transactions, in violation of ERISA §§ 404(a), 406(b)(1); and (2) Prohibited Transactions, in violation of ERISA § 406(a). (*Id.* ¶¶ 117-135.)

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

Federal Rule[4] of Civil Procedure 12(b)(1) authorizes a party to seek dismissal of an action for lack of subject matter jurisdiction. "Because standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). In the context of a 12(b)(1) motion, the plaintiff has the burden of establishing Article III standing to assert the claims. *Id.*

Although the default standard for a Rule 12(b)(1) motion made at the pleading stage is to accept the plaintiff's allegations as true, limited exceptions exist. Relevant here is the exception created by the distinction between "facial" and "factual" attacks on subject matter jurisdiction. *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). A facial attack accepts the factual allegations as pleaded, but "asserts that [they] are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A factual attack, in contrast, "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* Here, as Defendants do not contest the truth of the jurisdictional allegations in the FAC, their Motion is a facial attack that the Court resolves "as it would a motion to

---

[4] All further references to any "rule" are to the Federal Rules of Civil Procedure.

dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient to invoke the court's jurisdiction." *Leite*, 749 F.3d at 1121 (citing *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013)).

As Article III of the United States Constitution empowers federal courts to hear only "cases" and "controversies" (*see* U.S. Const. art. III, § 2), matters must satisfy the various justiciability criteria, like standing, developed for determining whether a matter is a case or controversy. To satisfy "the irreducible constitutional minimum of standing," the plaintiff must demonstrate: (1) he has suffered an "'injury in fact'"— an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) there is a causal connection between the injury and the conduct complained of — that is, the injury is "fairly traceable" to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) it is "likely," as opposed to merely "speculative," that the injury will be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

A suit brought by a plaintiff without Article III standing is not a "case or controversy," and an Article III federal court therefore lacks subject matter jurisdiction over the suit. *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004) (citing *Steel Co. v. Citizens for a Better Env't* , 523 U.S. 83, 101 (1998)). In that event, the suit should be dismissed under Rule 12(b)(1). *Id.* (citing *Steel Co.*, 523 U.S. at 109–10; *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003); *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 664 (9th Cir. 2002)).

B.     Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to bring a motion to dismiss for failure to state a claim upon which relief can be granted.  Rule 12(b)(6) is read along with Rule 8(a), which requires a short, plain statement upon which a pleading shows entitlement to relief.  Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party.  *See Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly,* 550 U.S. at 555 (citations omitted).  Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level."  *Id.*

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 556).

7

The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively" and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  *Starr v. Baca*, 652 F. 3d 1202, 1216 (9th Cir. 2011).

Although the scope of review is limited to the contents of the complaint, the Court may also consider exhibits submitted with the complaint, *Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1555 n.19 (9th Cir. 1990), and "take judicial notice of matters of public record outside the pleadings," *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988).  Moreover, "[d]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss."  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) overruled on other grounds by *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

### III.   DISCUSSION

Defendants seek dismissal of the FAC under Rules 12(b)(1) and 12(b)(6) on the following grounds: (1) Plaintiffs lack standing regarding BrokerageLink; (2) Plaintiffs' claims are untimely; (3) Count 1 fails because Plaintiffs do not plausibly allege a breach of the duty of loyalty or the duty of prudence; (4) Count 2 fails because it is premised solely upon allegations that Defendants made payments to Fidelity, an alleged party-in-interest; and (5) AT&T Inc. and the Doe Defendants are not appropriate defendants.  (Doc. No. 54.)

### A. Plaintiffs' Standing with Regard to BrokerageLink

Defendants first argue that the FAC's lack of allegations that any of the named Plaintiffs invested in a retail share of a mutual fund for which institutional shares were supposedly available is fatal because Plaintiffs have thus failed to show the requisite injury with respect to BrokerageLink. (Doc. No. 54-1 at 14-15.) The FAC lists only Plaintiff Bugielski as having allegedly invested through BrokerageLink, and alleges that he used it to his "financial detriment." (FAC ¶ 71.)

The Court agrees. As described above, in order to have standing, a plaintiff must show (1) an "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) a "causal connection between the injury" and the challenged action of the defendants; and (3) that is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Multistar Industries, Inc. v. U.S. Dept. of Transp.*, 707 F.3d 1045, 1054 (9th Cir. 2013) (quoting *Lujan*, 504 U.S. at 560-61).

In *Glanton ex rel. ALCOA Prescription Drug Plan v. Advance PCS Inc.*, the Ninth Circuit clarified the standing requirements for ERISA plaintiffs. 465 F.3d 1123 (9th Cir. 2006).[5] The panel in *Glanton* considered whether the plaintiffs,

---

[5] In their Opposition, Plaintiffs urge the Court to adopt the reasoning of *Urakhchin v. Allianz Asset Mgmt of America, L.P.*, Case No. SACV 15-1614-JLS (JCGx), 2016 WL 4507117, at *4-5 (C.D. Cal. August 5, 2016), another ERISA case from the Central District. (Doc. No. 58 at 14.) In *Urachkin*, the court found that the plaintiffs had "adequately allege[d] constitutional standing as to all the challenged funds in the Plan at issue, including funds in which Plaintiffs did not invest. *Id.* The *Urachkin* court reasoned that in ERISA cases, "courts look to the nature of the claims and allegations to determine whether the pleaded injury relates to the defendants' management of the Plan *as a whole*." *Id.* (emphasis in original). This Court finds, however, that the conclusion in *Urachkin* is inconsistent with the Ninth

one of whom participated in the defendant's prescription drug plan, had standing to sue the defendant for breach of fiduciary duty under ERISA. *Id.* at 1124-25. The plaintiffs, none of whom claimed that they were denied benefits or received inferior drugs, claimed that the defendant "charged the plans too much for drugs, and that this caused the plans to demand higher co-payments and contributions from participants." *Id.* at 1125. The panel ultimately concluded that the plaintiffs lacked standing because they had failed to demonstrate redressability. *Id.* In rejecting the plaintiffs' arguments that they had associational standing, the panel noted that ERISA plan beneficiaries could bring suits on behalf of the plan in a representative capacity "so long as plaintiffs otherwise meet the requirements for Article III standing." *Id.* at 1127.

Here, while the FAC alleges that Plaintiff Bugielski made investments through BrokerageLink to his "financial detriment," the FAC lacks any details as to what funds Bugielski purchased or how this led to his "financial detriment." The FAC does not allege that any Plaintiff purchased any of the more expensive retail shares through BrokerageLink. The allegation that Bugielski was enrolled in BrokerageLink is not sufficient to support a plausible inference that he suffered an injury. The vague "financial detriment" allegation, even when considered alongside the FAC's other allegations regarding the mutual funds available through BrokerageLink, nonetheless fails to demonstrate that Bugielski has a "concrete stake in the outcome of the proceedings." *Glanton*, 465 F.3d at 1127. Consequently, the FAC's allegations fail to demonstrate that Bugielski has standing to sue on behalf of the Plan in a representative capacity.

---

Circuit's holding in *Glanton*. Accordingly, the Court declines to adopt the reasoning of *Urachkin* and the other cases cited by Plaintiffs, nearly all of which are district court decisions from outside of the Ninth Circuit.

This conclusion is consistent with the decision reached in *Marshall v. Northrop Grumman Corp.*, a factually similar ERISA case recently decided in the Central District. Case No. CV 16-06795 AB (JCx), 2017 WL 2930839, at *8-9 (C.D. Cal. Jan 30, 2017). In *Marshall*, the complaint did not allege that any named plaintiff invested in the fund at issue, but did allege that plan participants bore the cost of mismanagement of the funds. *Id.* at *8. While the court reasoned that "although the management fees may have been borne by all Plan participants such that Plaintiffs could assert a cognizable injury, the alleged performance losses were sustained by only those who invested in [a particular fund]." *Id.* Thus, the court concluded "[a]t least as to this latter allegation, Plaintiffs have not alleged they individually invested in that fund such that they have suffered a concrete injury." *Id.* Here, while Plaintiffs allege that Bugielski used BrokerageLink to make investments to his "financial detriment," just as in *Marshall*, the FAC is lacking in sufficient detail as to the injury suffered by Bugielski or any other Plaintiff.

Thus, the Court GRANTS Defendants' Motion to Dismiss as to the FAC's allegations regarding BrokerageLink, with leave to amend.

B.  **Timeliness**[6]

Defendants also argue that Plaintiffs' recordkeeping and BrokerageLink claims are time-barred under ERISA's statute of limitations. (Doc. No. 54-1 at 15-18.)

---

[6] The statute of limitations is appropriate to evaluate at the 12(b)(6) stage where failure to comply with the applicable statute of limitations is evident from the allegations of the complaint. *See Seven Arts Filmed Entertainment Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (affirming dismissal on statute of limitations grounds). Here, because the timeliness issue is evident from

> Under ERISA,
>
> No action may be commenced … with respect to a fiduciary's breach of any responsibility, duty, or obligation … after the earlier of –
>
> > (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
> >
> > (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation.

29 U.S.C. § 1113. "[I]n the overall framework, to extend the statute beyond six years, a plaintiff must alleged fraud or concealment … and to shorten the statute to three years a defendant must show actual knowledge—that is, knowledge of the transaction that constituted the alleged violation, not knowledge of the law." *Marshall*, 2017 WL 2930839, at *4 (citing *Blanton v. Anzalone*, 760 F.2d 989, 992 (9th Cir. 1985)).

The Ninth Circuit has held that the ERISA statute "requires the plaintiff's knowledge to be measured from the 'earliest date' on which he or she knew of the breach." *Phillips v. Alaska Hotel and Restaurant Employees Pension Fund*, 944 F.2d 509, 520 (9th Cir. 1991). It later clarified that "the earliest date on which a plaintiff became aware of any breach … starts the limitation period of § 1113[](2) running," and "[w]hen a plaintiff has actual knowledge of a breach, § 1113(2) operates to keep her from sitting on her rights and allowing the series of related breaches to continue." *Tibble v. Edison Int'l*, 843 F.3d 1187, 1196 (9th Cir. 2016) (*quoting Phillips*, 944 F.2d at 520). On the other hand, when a plaintiff

---

the Form 5550s, of which the Court has taken judicial notice, it is appropriate to evaluate at this juncture.


does not have actual knowledge of a breach of continuing duty and § 1131 applies, "each new breach begins a six-year limitations period under § 1113(1)." *Id.* at 1197.

The Ninth Circuit has also held that the actual knowledge that triggers the statute of limitations is the plaintiffs' "knowledge of the transaction that constituted the alleged violation, not their knowledge of the law." *Blanton*, 760 F.2d at 992; *see also Meagher v. Int'l Ass'n of Machinists and Aerospace Workers*, 856 F.2d 1418, 1423 (9th Cir. 1988) ("Each time Meagher received a check, he had knowledge of the transaction, though he may not have known at the time that the reduction in benefits was unlawful under ERISA."). Thus, a plaintiff's receipt of certain Plan documents, such as a Form 5500, can give rise to the "actual knowledge" that triggers the three-year statute of limitations. *See In re Northrop Grumman Corp. Erisa Litig.*, Case No. CV 06-06213 MMM (JCx), 2015 WL 10433713, at *22-23 (C.D. Cal. Nov. 24. 2015) ("To the extent plaintiffs contend the investment fees charged were excessive and unreasonable, they were on notice of those fees as early as March 2000, when they began receiving Quarterly Performance Updates").

In *Marshall*, the court summarized the requisite ERISA statute of limitations analysis as an examination of the following:

> (1) when the alleged breaches occurred, (2) whether Plaintiffs had actual knowledge of them so as to trigger the three-year statute, and if not, (3) whether the six-year statute of limitations has expired, or (4) if the nature of the duty allegedly breached was continuing such that the six-year statute of limitations was re-triggered by a later and continuing breach.

2017 WL 2930839, at *5.

Plaintiffs filed this suit in November 2017. (Doc. No. 1.) They do not argue that the Court should apply the six-year statute of limitations for continuing breaches, but argue that the Court should depart from the holding in *Blanton* and adopt a more literal reading of the "actual knowledge" required to trigger the three-year statute of limitations. (Doc. No. 58 at 15-16.) They cite the Ninth Circuit's decision in *Waller v. Blue Cross of Cal.*, 32 F.3d 1337 (9th Cir. 1994). The *Waller* panel rejected the defendant's argument that the statute of limitations began to run when the plaintiffs learned that the defendant had purchased certain annuities. *Id.* at 1341. The panel's finding that the plaintiffs' claims were timely, however, was premised upon their acceptance of the plaintiffs' specific allegation that they timely filed the action within three years of actual knowledge of the alleged breach of fiduciary duty. *Id.* The narrow holding in *Waller* thus does not conflict with the standard articulated in *Blanton*.

*Waller*, however is distinguishable from this case because here there is no such allegation that Plaintiffs filed their suit within three years of actual knowledge that Defendants were in violation of ERISA. Nor is there any allegation regarding when Plaintiffs first had "actual knowledge" or when counsel began to investigate Defendants' conduct with regard to the Plan. *Cf Johnson v. Fujitsu Technology and Business of America, Inc.*, 250 F. Supp. 3d 460, 464-65 (N.D. Cal. 2017) (declining to grant defendants' motion to dismiss on timeliness grounds where the complaint alleged that counsel "began an investigation of the Plan in late 2015" and that the plaintiffs did not review any of the documents cited in the complaint until after the investigation began"). And although Plaintiffs argue that the Form 5500s, of which the Court has taken judicial notice, were not distributed to participants, Plaintiffs do not and cannot dispute that such documents were indeed publicly available by October 2014, and that these Form

14

5500s form the basis of their recordkeeping and BrokerageLink claims. Even if the Court were to adopt Plaintiffs' literal reading of "actual knowledge," the FAC lacks any allegation regarding when Plaintiffs discovered Defendants' alleged misconduct and the Court is unable to determine whether the statute of limitations applies.[7] This defect, however, does not appear incurable, and while the Court GRANTS Defendants' Motion on timeliness grounds, the Court will allow Plaintiff leave to amend.

## IV. CONCLUSION

Because the Court is not satisfied that the FAC properly alleges standing and timeliness, the Court declines to reach the parties' arguments regarding the sufficiency of Counts I and II or the appropriateness of AT&T, Inc. and the Doe Defendants. The Court therefore GRANTS Defendant's Motion with leave to amend. Plaintiffs must file their Second Amended Complaint by no later than 4:00 P.M. on July 30, 2018.

**IT IS SO ORDERED.**

Dated:   7/18/18

_Virginia A. Phillips_
Virginia A. Phillips
Chief United States District Judge

---

[7] The Court moreover notes that the class period, defined as "the period from six years before the filing of this action until the time of trial" is vague. Indeed, the timing of when exactly Defendant allegedly committed the fiduciary breaches is not clearly set forth in the FAC.